## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. TAMMANY PARISH HOSPITAL ) | |
| SERVICE DISTRICT NO. 1, D/B/A/ ) | CIVIL ACTION |
| ST. TAMMANY PARISH HOSPITAL ) | |
| ) | No. 07-1065 |
| Plaintiff, ) | |
| ) | SECTION "C", MAGISTRATE 4 |
| v. ) | |
| ) | Judge Berrigan |
| TRAVELERS PROPERTY CASUALTY ) | |
| COMPANY OF AMERICA ) | Magistrate Judge Roby |
| ) | |
| Defendant. ) | |
| ) | |

### TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S
### MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS ARISING OUT
### OF PLAINTIFFS' EXPERT'S SPOLIATION OF EVIDENCE

Defendant Travelers Property Casualty Company of America ("Travelers") respectfully

requests that the court enter sanctions against Plaintiff because Plaintiff's testifying expert,

Christopher M. Brophy, destroyed critical evidence upon which he relied in preparing his Rule

26(a)(2)(B) report and discarded prior drafts of his report. In his Rule 26 report, Mr. Brophy

contends that Plaintiff lost income in excess of $4 million during August and September 2005.

However, financial information produced by Plaintiff in 2005 and early 2006 shows that, in

August and September 2005, Plaintiff's operating income was at most $768,000 off budget, and

that in October, it exceeded budget by nearly $500,000. Mr. Brophy explains this discrepancy

by contending that the information provided to Travelers was incorrect because Plaintiff's internal recordkeeping and ability to report accurate financial data was hindered by communication failures during the hurricane. Mr. Brophy relied upon interviews with Hospital personnel to reach that conclusion.

Unfortunately, even though these interviews were plainly critical to his opinion, Mr. Brophy destroyed all records of them. Exacerbating the damage from the absence of these notes, during his deposition, Mr. Brophy repeatedly testified that he did not recall various issues related to his conversations with Hospital personnel. *See, e.g.*, Brophy Tr. at 75-78 (Material portions of Mr. Brophy's transcript are attached hereto as Exhibit A). At a minimum, these destroyed notes might have been used to refresh his recollection and to evaluate the accuracy of his conclusions regarding Plaintiff's recordkeeping during and following the hurricane. In addition, Mr. Brophy destroyed all earlier drafts of his report, making it impossible for Travelers to evaluate the reasoning leading up to the calculations in his final report. The destruction of these earlier drafts is particularly important because Mr. Brophy's existing report is based upon numbers not contained in the documents cited as support. Presumably, his earlier drafts would contain some indication of the manner in which he derived these numbers.

In sum, by destroying his notes and draft reports, Mr. Brophy deliberately spoliated critical relevant evidence in violation of his and Plaintiff's obligations. Travelers has been prejudiced and is unable to obtain important information regarding Mr. Brophy's calculations and the basis for his contentions. Accordingly, sanctions should be entered against Plaintiff arising out of its expert's spoliation of evidence, including an order precluding Mr. Brophy from testifying and Plaintiff from introducing any evidence concerning its adjustments of financial data.

## BACKGROUND

After Hurricane Katrina, Plaintiff sought coverage from Travelers for lost income. Plaintiff contended that, as a result of the hurricane and orders closing the parish, Plaintiff had lost income it would otherwise have earned.   Travelers promptly began investigating this claim, engaging an accountant, Daniel Wright of the firm Kriegstein, Kim & Wright.  The information provided by Plaintiff to Mr. Wright included its revenues and expenses shown in Plaintiff's financial statements.  Based upon this information, Mr. Wright calculated that Plaintiff's loss was no greater than the $500,000 applicable deductible in its policy with Travelers.

In August 2006, Travelers informed Plaintiff of Mr. Wright's conclusion and requested any information Plaintiff had showing that his calculations were incorrect.  (Ex. B.)  In response, Plaintiff and its counsel engaged Mr. Brophy's firm – Ernst & Young, LLP – to calculate Plaintiff's losses.

Three months later, in November 2006, Plaintiff responded to Mr. Wright's conclusion, submitting a report from Ernst & Young, LLP and stating for the first time that Travelers reliance on the data originally provided by Plaintiff was "flawed."  (Ex. C.)  Plaintiff claimed:

> The Ernst & Young report calculates lost net revenue properly
> through reliance on daily patient data for the period of loss.

(Ex. C.)[1]

---

[1] As shown in the summaries attached hereto as Exhibit D, the financial information Plaintiff had previously produced shows that Plaintiff had sustained at most a loss of $381,000 in August (the budgeted income, $1,004,000, less the actual income, $624,000), and a loss of $387,000 in September (the budgeted income, $1,139,000, less the actual income, $752,000).  Further, in October, when Plaintiff also contended its operations had been impacted by the effects of Katrina, Plaintiff's financial information shows a possible gain of $471,000 (the actual income, $1,443,000 less the budgeted income, $962,000).  This information therefore shows at most a $297,000 loss during the period Plaintiff contended its operations were effected.  In contrast, based upon Plaintiff's new data, Plaintiff and Mr. Brophy, claim a loss in August and September of in excess of $4,000,000.

Evidence regarding any alleged flaws in the financial data originally provided to Travelers and the reasons Plaintiff, Mr. Brophy and Ernst &Young disregarded Plaintiff's published monthly reports is material to this litigation.  Not surprisingly, therefore, in connection with preparing his report, among the first things Mr. Brophy did was interview Hospital personnel responsible for maintaining financial data – in particular, Ms. Sandra DiPietro. Brophy Tr. (Ex. A) at 37, ll. 16-17; 38, ll. 13-14.  Also, not surprisingly, given the importance of the issues, Mr. Brophy took notes of his conversations.  But, surprisingly, rather than preserve these notes so that Travelers might examine them and assess Mr. Brophy's recollections and credibility regarding the content of these conversations, Mr. Brophy deliberately destroyed his notes:

> Q.   Do you recall taking any notes [of your conversations]?
>
> A.   I would say that I did take some pretty basic notes.
>
> Q.   And then you threw them away afterwards?
>
> A.   Yes.
>
> Q.   With whom were the conversations for which you took those now discarded notes?
>
> A.   Primarily with Sandra DiPietro.  We were looking to understand some of the aspects of the claims.
>
> Q.   And she explained aspects to you, is that correct?
>
> A.   We had questions for her which she answered, yes.
>
> Q.   And you took notes with respect to her answers, is that correct?
>
> A.   Some, yes.

Brophy Tr. (Ex. A) at 33.

Not only did Mr. Brophy destroy these notes of his interviews with Hospital personnel, but he also destroyed prior drafts of his report.  The destruction of these prior drafts is of concern

because the numbers used in Mr. Brophy's report differ from those contained in the documents upon which he relies. For example, schedule 3 of his report (attached as Exhibit E) gives Plaintiff's actual income and expenses to the dollar. But the document cited as support does not contain such information. It contains Plaintiff's actual income rounded to thousands. (Ex. D.) Presumably, Mr. Brophy's drafts of his reports and calculations would have shown how he derived figures to the dollar from a document that does not contain that information. Further, the effects of different adjustments Mr. Brophy considered making to Plaintiff's financial data might have been reflected in these prior drafts as well. Thus, not only has Travelers been deprived of the ability to evaluate and, if appropriate, present to the fact finder Mr. Brophy's notes of interviews with Plaintiff's personnel, but in addition, Travelers is unable to discover and, if appropriate, present to the fact finder prior drafts and calculations that Mr. Brophy performed quantifying Plaintiff's alleged loss of income and the sources he used to obtain his figures.

The absence of Mr. Brophy's notes and drafts is important not only to evaluate Mr. Brophy's credibility and opinions, but also to evaluate Plaintiff's as well. Plaintiff's witnesses have provided inconsistent testimony regarding the reliability of the financial data provided to Travelers. In particular, Plaintiff's Chief Financial Officer contradicted Mr. Brophy at his deposition, testifying that the monthly statement for September 2005, was not flawed, but completely accurate:

> Q.   What about for the September 2005 statement, do you see any inaccuracies in this Statement?
>
> A.   No, not that I can identify.

Mabe Tr. (Ex. F) at 101. The data contained in the September 2005 statement is the data provided to Travelers without the adjustments used by Mr. Brophy.

## ARGUMENT

## I.  SANCTIONS SHOULD BE ENTERED AGAINST PLAINTIFF FOR SPOLIATION OF EVIDENCE

### A.  Mr. Brophy's Destruction Of His Notes And Draft Report Constitutes Spoliation Warranting Sanctions

Spoliation "encompasses the loss, destruction or material alteration of evidence, whether it be intentional or negligent." Roby and Carter, "Spoliation: The Case Of The Missing Evidence," *Louisiana Bar Journal* (October 1999). "[I]t is well established that a court may use … sanction[s] when a party suppresses evidence through spoliation." *E.g. Anderson v. Production Management Corp.*, No. 98-2234, 2000 WL 492095 (E.D. La. Apr. 25, 2000). Here, Mr. Brophy plainly spoliated evidence. His notes of interviews and his prior drafts were plainly discoverable evidence, and he destroyed them.

The sole question then is whether Mr. Brophy's spoliation is of the sort that warrants sanctions. It is. Mr. Brophy's destruction of evidence was not negligent. Mr. Brophy did not, for example, accidentally leave his notes and draft reports in a box under a desk, from where it was removed and destroyed by maintenance staff. *Contrast Caparotta v. Entergy Corp.*, 168 F.3d 754 (1999) (no sanctions where documents left in box under secretary's ledge were destroyed by maintenance staff). Rather, Mr. Brophy deliberately discarded his interview notes, after preparing his report, and intentionally deleted his draft reports so that they could not be recovered. Brophy Tr. at 33. This is a case where the spoliation was deliberate; and the Fifth Circuit has long recognized that such deliberate destruction of evidence warrants sanctions. *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975) (permitting adverse inference where evidence is destroyed non-negligently).

Equally significant is that Mr. Brophy is a professional litigation consultant and witness, who was specifically engaged to testify at trial.[2] This is not a situation where a lay witness destroyed material information. It is a situation where a professional – whose business involves repeated engagements holding himself out as an expert before federal courts – destroyed evidence material to his anticipated testimony. At a minimum, having been engaged as a witness to appear in federal court, Mr. Brophy should have knowledge of the rules of federal court, including the rule that evidence be preserved, not destroyed. As such, Mr. Brophy knew or should have known that his destruction of evidence was prohibited.

Under identical circumstance, a federal court recently sanctioned a party whose expert destroyed notes and prior drafts. In *Trigon Ins Co. v. United States*, 204 F.R.D. 277 (E.D. Va. 2001), a testifying expert had destroyed drafts of his Rule 26(a)(2) report and reports of communications. The federal court found:

> [T]he basic precepts of the Federal Rules of Civil Procedure
> relating to the work of testifying experts requires, on this record,
> the retention and production of draft reports and the
> correspondence reviewed by the testifying expert. That is obvious
> from the text of Fed. R. Civ. P. 26(a)(2), which governs mandatory
> disclosure obligations respecting testifying experts, requires that
> the testifying expert must file a report which contains, *inter alia*, "a
> complete statement of all opinions to be expressed and the basis
> and reasons therefor; [and] the data or other information
> *considered* by the witness in forming the opinions...." Fed. R. Civ.
> P. 26(a)(2) (emphasis supplied).

*Trigon Ins. Co.*, 204 F.R.D. at 283. Although, in part because a significant amount of the spoliated evidence was recovered, the *Trigon* court did not preclude the expert's testimony, it

---

[2] Mr. Brophy has been in this business at Ernst & Young since 2002, and before that was in the same business at Arthur Anderson.

awarded sanctions for spoliation, including an adverse inference regarding the credibility of the expert. *Trigon Ins. Co.*, 204 F.R.D. at 291.

**B.      Appropriate Sanctions Here Include Preclusion And An Adverse Inference**

In general, courts have the ability to fashion sanctions for spoliation based upon the facts and circumstances of the situation. *See Anderson v. Production Management Corp.*, No. 98-2234, 2000 WL 492095, *3 (E.D. La. Apr. 25, 2000). The Fifth Circuit has held that an adverse inference is appropriate where there has been intentional spoliation of evidence. *Vicks v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975). Here, a stronger sanction than an adverse inference is required.

Perhaps the central issue in this matter is whether the financial data provided to Travelers was flawed, as Plaintiff contends, and whether the adjustments made to that data were appropriate; or whether the data originally provided to Travelers by Plaintiff is correct and the adjustments should not have been made. It was only after Travelers demonstrated to Plaintiff that its own financial data showed a loss below the applicable deductible that Plaintiff informed Travelers of its contention that the monthly income statements were unreliable. Obviously, critical questions that need to be addressed include the motivation for Plaintiff's adjustment of this data. Further, as noted above, Plaintiff's representatives have contradicted Mr. Brophy about the accuracy of the September 2005 statement. Plaintiff's Chief Financial Officer testified that the September 2005 statement did not have any inaccuracies. Mabe Tr. (Ex. F) at 101.

Also material is when Plaintiff determined that its monthly statements were not reliable. Was it before engaging Ernst & Young? Or only after Ernst & Young appreciated that the unadjusted data showed that the claim was below the deductible? These are questions that could have been evaluated by consultation of Mr. Brophy's notes. But the notes are not recoverable because Mr. Brophy threw them away. Consequently, contemporaneous evidence on these

issues is no longer available. There is no means of properly addressing this spoliation other than by precluding testimony by Mr. Brophy and any evidence regarding Plaintiff's adjustments to its financial data. If Mr. Brophy is permitted to testify, Travelers will be deprived of information plainly critical to his calculations and the basis of his opinions – Mr. Brophy destroyed his notes of conversations regarding Plaintiff's data as well as prior drafts of his report.

Whether Mr. Brophy's testimony is precluded or not, Travelers is entitled to an adverse inference based upon this spoliation of evidence. "It is well established that a court may use the sanction of an adverse evidentiary inference when a party suppresses evidence through spoliation." *Anderson*, 2000 WL 492095, *3. In this case, one of the central issues is whether the financial data provided to Travelers was flawed. During his discussions with Hospital personnel about Plaintiff's financial data, Mr. Brophy took notes but destroyed them. During his deposition, Mr. Brophy testified that he did not recall various issues related to those conversations. *See, e.g.*, Brophy Tr. at 75-78. Accordingly, at a minimum, Travelers is entitled to an adverse inference based upon Mr. Brophy's spoliation of critical evidence.

## CONCLUSION

For the foregoing reasons, sanctions should be entered against Plaintiff precluding it from presenting testimony by Mr. Brophy and any evidence regarding adjustments to its financial data. Alternatively, the Court should allow an adverse inference to be drawn by the fact finder against Plaintiff due to this spoliation.

Date:   February 19, 2008

Respectfully submitted,

*s/Joseph P. Guichet*
Ralph S. Hubbard, III, #7040
Joseph P. Guichet, T.A., #24441
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
504-568-1990 (Telephone)
504-310-9195 (Facsimile)

Of Counsel:

Lon A. Berk (admitted *pro hac vice*)
Robert J. Morrow (admitted *pro hac vice*)
Syed S. Ahmad (admitted *pro hac vice*)
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
703-714-7400 (Telephone)
703-918-4050 (Facsimile)

*Attorneys for Defendant*
*Travelers Property Casualty Company Of America*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2008, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Plaintiff's counsel by operation of the Court's electronic filing system.

*s/Joseph P. Guichet*
Joseph P. Guichet